IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CHARLES ELLENBECKER and VALENTIN RAMOS, Individually, and on Behalf of All Others Similarly Situated, | )<br>)<br>)<br>) |
| Plaintiff, | ) Case No. 09-CV-7293 |
| | ) |
| v. | ) Judge George W. Lindberg |
| | ) |
| NORTH STAR CABLE CONSTRUCTION, INC., CHRISTINE LEE, COMCAST CORPORATION and COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC | ) Magistrate Judge Michael T.<br>) Mason<br>)<br>)<br>)<br>)<br>) |
| | ) |
| Defendants. | ) |

## UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

### I. INTRODUCTION

1. In this joint motion, Named Plaintiffs, CHARLES ELLENBECKER and VALENTIN RAMOS ("Named Plaintiffs"), on behalf of themselves and on behalf of all others allegedly similarly situated ("Class Members"), seek preliminary approval of a proposed class action settlement ("Settlement") reached on behalf of the Class described below. (*See* Ex. A – Class Action Settlement Agreement). If approved, the Settlement would resolve all of the pending claims brought by Plaintiffs against Comcast in this proceeding. It would not resolve the pending claims against Defendants North Star or Christine Lee.

2. The Named Plaintiffs and class members worked as technicians in the State of Illinois. Named Plaintiffs allege they were misclassified as independent contractors and are owed unpaid wages and improper deductions under the *Illinois Minimum Wage Law* (IMWL), 820 ILCS 105/1, *et seq.*, and, the *Illinois Wage Payment and Collection Act* (IWPCA).

3. Comcast denies and continues to deny all of the allegations in the Litigation and has denied and continues to deny any and all liability and damages of any kind to anyone with respect to these alleged facts or causes of action asserted in the Litigation.

4. On June 20, 2011 the Parties mediated the Litigation in Chicago, Illinois, with retired United States District Court Judge Wayne R. Andersen. Although the Parties did not reach a settlement at the mediation, the Parties continued negotiations directly and consulted with Judge Anderson in an attempt to resolve certain issues with respect to settlement. In August 2011, after extensive settlement negotiations, the Named Plaintiffs and Comcast arrived at an agreement in principle to settle the claims against Comcast in the Litigation.

5. Under Fed. R. Civ. P. 23(e), class claims may be settled only with court approval. During the preliminary approval stage, the district court decides whether the proposed settlement falls "within the range of possible approval." *Cook v. McCarron*, 1997 WL 47448, at *7 (N.D.Ill. 1997) (citation omitted); *Manual for Complex Litigation, Third,* section 30.41, p. 237 (1995). If so, the court should grant preliminary approval of the settlement, authorize the parties to give notice of the proposed Settlement to Class members, and schedule a formal fairness hearing. *Id.*; *Gautreaux v. Pierce,* 690 F.2d 616, 621 (7th Cir. 1982). Settlements that are reached as a result of arm's-length bargaining between experienced and well-informed counsel are entitled to a presumption of fairness. *Manual for Complex Litigation, Third,* section 30.42, p. 240; *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2nd Cir. 2005).

6. As discussed below, the proposed Settlement falls well within the "range of possible approval," in light of the nature of Plaintiffs' claims, Comcast's defenses and the risks and costs associated with further litigation. Furthermore, the Settlement is entitled to a presumption of fairness since it was reached through arm's-length bargaining between experienced counsel

over an extended period of time.

7. Accordingly, Plaintiffs respectfully request that this Court: (1) grant preliminary approval of the proposed settlement; (2) authorize mailing of the class notice in a manner consistent with the Settlement; (3); schedule a final approval hearing; and, (4) enter the proposed Order for Preliminary Approval filed contemporaneously herewith. Defendants do not oppose the motion.

8. Once this Court has ruled on the motion for preliminary approval, the deadlines for providing notice, opting out of the Settlement and submitting objections or comments to the proposed Settlement will begin to run. The schedule set forth below, which is subject to the timing of actions to be taken by the Parties and the Court in this case, provides the Court with an approximate time-line of the various steps in the settlement approval process under the Settlement.

|   | *Event* | *Timing* |
|---|---|---|
| 1 | Motion for Preliminary Approval filed | November 28, 2011 |
| 2 | Hearing on Motion for Preliminary Approval | December __, 2011 |
| 3 | Notice Date | TBD |
| 4 | Deadline for filing Claim Forms | 60 days after Notice Date |
| 5 | Deadline for filing Requests for Exclusion or Objections | 60 days after Notice Date |
| 6 | Final Approval Fairness Hearing | At least 30 days after the Deadline for filing Claim Forms |

## II. PROCEDURAL BACKGROUND

9. Named Plaintiffs commenced the Litigation by filing a complaint on October 29,

2009, against North Star Cable Communications, Inc. and Christine Lee (collectively, the "North Star Defendants"), asserting, *inter alia*, that members of the Settlement Class were misclassified as independent contractors for a period of time, not compensated for all hours worked, not paid overtime wages, and were subject to improper deductions, in violation of the IMWL and the IWPCA, and that the North Star Defendants' failure to provide all compensation that was due and owing gave rise to claims under Illinois law for unjust enrichment, *quantum meruit* and breach of implied contract. [1]

10. On January 11, 2010, before Comcast was added as a party to this suit and before formal discovery had begun, the Named Plaintiffs moved under Federal Rule of Civil Procedure 23(b)(3) for certification a class. The North Star Defendants did not oppose class certification and, on February 18, 2010, the Court granted the Named Plaintiffs' motion and certified a class of technicians, defined as:

> All individuals who are currently employed or were employed by one or more of the Defendants, their subsidiaries or affiliated companies, in the state of Illinois as technicians or other positions performing similar responsibilities for the Defendants at any time during the relevant statute of limitations period.[2]

11. On June 18, 2010, the Named Plaintiffs amended their complaint to add Comcast as a Defendant, and asserted the same claims against Comcast as they previously asserted against the North Star Defendants.

12. On August 9, 2010, Comcast filed an Answer denying it was liable under any of the Named Plaintiffs' claims, and specifically denying that it was the employer of the Named Plaintiffs or any member of the Settlement Class and denying that it had violated the IMWL, IWPCA, FLSA, or any other law, rule or regulation relating to the payment of compensation to

---

[1] The Named Plaintiffs also asserted individual claims under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA").
[2] *See* Exhibit 1 – list of class members.

the Named Plaintiffs or Settlement Class.

13. After Comcast's addition to the lawsuit, the Parties engaged in significant discovery, including the exchange of Rule 26 disclosures, service of formal document requests and interrogatories, the exchange of thousands of pages of documents, and the depositions of nine witnesses, including both of the Named Plaintiffs.

14. On April 8, 2011, the Named Plaintiffs filed a Motion for Partial Summary Judgment against the North Star Defendants, and on April 15, 2011, Comcast filed a Motion to Decertify the Class.

15. Prior to full briefing on both motions, the Parties agreed to mediate this Action.

16. As a condition of mediation, the Parties agreed to exchange all information, data and documents necessary to fully and fairly evaluate the claims of the Named Plaintiffs and putative class members. To that end, the parties exchanged comprehensive personnel records and related information, including technicians' dates of service, compensation data, and time data. Comcast and the North Star Defendants have also provided Class Counsel with thousands of pages of documents, including company policies related to timekeeping and payment of overtime, and other compliance documents.

17. The Parties mediated the Litigation on June 20, 2011 in Chicago, Illinois, with retired United States District Court Judge Wayne R. Andersen. Although the Parties did not reach a settlement at the mediation, the Parties continued negotiations directly. In August 2011, after extensive settlement negotiations, the Named Plaintiffs and Comcast arrived at an agreement in principle to settle the claims against Comcast in the Litigation.

18. Comcast denies and continues to deny all of the allegations in the Litigation and has denied and continues to deny any and all liability and damages of any kind to anyone with

respect to these alleged facts or causes of action asserted in the Litigation. Comcast specifically denies that it ever had an employment relationship with the Named Plaintiffs or any of the Class Members. Comcast also denies that litigation of this case as a class or collective action is appropriate had it been litigated. Comcast further reserves the right to argue that this case should be decertified as a class action in the event this settlement is not approved. Nonetheless, without admitting or conceding any liability, damages, or the propriety of class treatment whatsoever, Comcast has agreed to settle the Litigation on the terms and conditions set forth in the Settlement Agreement to avoid the burden, expense and uncertainty of continuing the Litigation.

19. The Parties recognize that the outcome in the Litigation is uncertain and that achieving a final result through the litigation process would require substantial additional risk, discovery, time, and expense.

20. The Named Plaintiffs and Class Counsel have conducted a comprehensive investigation and evaluation of the facts and law relating to the claims asserted in the Lawsuit to determine how best to serve the interests of the Settlement Class and believe, in view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement to the Settlement Class, that the settlement as provided in the Settlement Agreement is in the best interests of the Settlement Class and that the settlement provided in the Agreement represents a fair, reasonable, and adequate resolution of the claims made in the Litigation.

21. The Parties desire to settle fully and finally the differences between them and have agreed to settle this case as to the Named Plaintiffs as well as all individuals who are currently engaged or were engaged by one or more of the North Star Defendants in the state of Illinois as technicians or other positions performing similar responsibilities on behalf of Comcast or any Comcast affiliate during the three-year period preceding the Court's

approval of the Settlement.

22. The Parties agree to undertake their best efforts, including all steps and efforts that may become necessary by order of the Court, to effectuate the terms and purposes of the Settlement Agreement.

### III. THE TERMS OF THE PROPOSED SETTLEMENT

23. The terms of the Settlement are contained in the Agreement, filed herewith. There are no undisclosed side agreements between Named Plaintiffs and Comcast. *See* Exhibit B - Declaration of Ryan F. Stephan.

24. Comcast has agreed to pay a total of $225,000 to satisfy: 1) the timely and valid claims of the Class Members; 2) the attorneys' fees and litigation expenses of Class Counsel; 3) the proposed enhancements to the Named Plaintiffs; and, 4) the costs incurred by the Settlement Administrator. *See* Exhibit A – Class Action Settlement Agreement. The Settlement Payment is entirely non-reversionary. In other words, any unclaimed funds or un-awarded attorneys' fees, costs, or enhancements will be reallocated and distributed to Class members who have filed claims, and no money will be returned to Comcast.

25. The Settlement Administrator will mail to each Class member a *Notice Regarding Proposed Settlement of Class Action For Members of the Settlement Class* (*See* Exhibit 2 of Exhibit A - "Class Notice"), as well as a *Claim and Consent to Join Settlement Form* (*See* Exhibit 2 – Form A of Exhibit A), an *Election to Opt Out of Settlement and Class Action Form* (*See* Exhibit 2 – Form B of Exhibit A), a *Change of Name and/or Address Information Form* (*See* Exhibit 2 – Form C of Exhibit A) and a postage pre-paid return envelope (the "Settlement Documents") as approved by the Court. The Class Notice describes the nature of the litigation, the terms of the Settlement, as well as the Class members' options with regard to participating in the proposed

Settlement, objecting to the Settlement, or opting out. *See* Exhibit 2 of Exhibit A. The Settlement Documents will be sent, postage pre-paid, via first class mail to the last-known address of each Class member. *See* Exhibit A. Prior to mailing the Class Notices, the Class members' addresses shall be run through the U.S. Postal Service's National Change of Address database and updated as necessary. To the extent any Settlement Documents are returned as undeliverable, a skip trace will be performed and the Settlement Documents will be mailed to any new addresses located. *See* Exhibit A.

26. Class members will have 60 days to file a claim, object to the Settlement, or opt out. *See* Exhibit A.

27. Class Members may elect to participate in the Settlement by timely completing and submitting a "Claim and Consent to Join Settlement Form" to the Settlement Administrator. *See* Exhibit A. Class members who properly and timely submit a Claim Form will receive a settlement payment of at least $8.47 to $10.59 for each week worked according the Settlement Agreement. *See* Exhibit A.

28. All Class members who do not opt out of the Settlement will be subject to this Court's judgment and, once the judgment becomes final, be deemed to have released, and to have covenanted and agreed not to file, prosecute, participate in, authorize, or cooperate in the filing or prosecution of any action or proceeding on the basis of any claims that were alleged in Plaintiffs' Complaint.[3]

29. Furthermore, all Class members who return the consent form and receive payment in this case shall further, once the judgment becomes final, be deemed to have released, and to have covenanted and agreed not to file, prosecute, participate in, authorize, or cooperate in the filing

---

[3] Class Members who do not timely return Claim forms are not releasing any federal FLSA claims. The notice between the parties will specify that any Claimant who does return the claim form is indeed releasing his or her FLSA claims, in addition to wage and hour claims under Illinois law.

or prosecution of any action or proceeding on the basis of any claims under the Fair Labor Standards Act related to Plaintiffs' allegations in the Complaint.

30. Plaintiffs' counsel will move the Court for an award of attorney's fees of up to Seventy Four Thousand Two Hundred and Fifty Dollars ($74,250.00) and expenses actually incurred not to exceed the total sum of Ten Thousand Seven Hundred and Fifty Dollars ($10,750.00). *See* Exhibit A. In addition, Plaintiffs' counsel will request that the Court award a service payment of $10,000.00 to be divided among the Named Plaintiffs to compensate them for the time they spent, and the risk they undertook, in prosecuting this action on behalf of the Class, including answering written discovery, giving depositions and participating in settlement efforts, including the June, 2011 mediation. *See* Exhibit A. All of these amounts are subject to Court approval. Comcast agrees not to oppose these motions.

31. After deducting the attorneys' fees and expenses awarded by the Court and after deducting any incentive award to the Class Representative, and after payment of all administration costs from the Settlement Account**,** the moneys remaining in the Settlement Account shall be allocated to Class Members who timely submit valid Claim Forms based on the number of calendar weeks they worked until the Settlement Account is depleted.[4]

32. Finally, the Settlement provides for a final approval hearing on the fairness and adequacy of the proposed Settlement, and on Plaintiffs' attorneys' request for attorneys' fees and litigation expenses, the administration costs, and the service payments to the Class Representative. The Class Notice will advise Class members of the final approval hearing and their right to object to the Settlement. At the final approval hearing, the parties will address any issues raised by Class members, and the Court will have a second opportunity to review the

---

[4] Because this is a non-reversionary settlement, (except for the exclusions provided in the settlement agreement), any unclaimed funds will be allocated and distributed to Class members who have timely filed claims.

Settlement before deciding whether to issue final approval.

## IV. THE COURT SHOULD GRANT PRELIMINARY APPROVAL

33. The dismissal or compromise of any class action requires the Court's approval. FED. R. CIV. P. 23(e). The approval of any proposed class action settlement is typically exercised in the two-step process of "preliminary" and "final" approval. MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41, at 236 (1995). Although the legal standards for preliminary and final approval overlap, preliminary approval requires only a threshold finding that the settlement could be approved as fair and adequate after notice to the class.

34. In the first step, the Court makes a preliminary determination as to whether the settlement falls "within the range of possible approval." *Cook v. McCarron*, 1997 WL 47448, at *7 (N.D. Ill. 1997) (citation omitted); Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.25 (3d ed. 1993) ("NEWBERG"). "The purpose of the initial hearing is to ascertain whether there is any reason to notify the class members of the proposed settlement and proceed with a fairness hearing." *Id*. Once the settlement is found to be "within the range of possible approval" at a final fairness hearing, this final approval hearing is scheduled and notice is provided to the class. *Id.*

35. The second step of the approval process is the final determination, following a hearing at which time any objections by class members may be considered. The Court then determines whether the settlement is fair, reasonable and adequate from the standpoint of the Class. *Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir.1996); NEWBERG, § 11.41. Courts consistently favor settlements of disputed claims. *E.g.*, *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist.*, 921 F.2d 1371, 1383 (8th Cir.1990) ("the law strongly favors settlements ... [and][c]ourts should hospitably receive them.") "There is usually an initial presumption of fairness when a proposed

class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." NEWBERG, §11.41 at 11-88; *Hispanics United of DuPage County v. Village of Addison, Ill.,* 988 F.Supp. 1130, 1149 fn. 6 (N.D. Ill. 1997); *Little Rock Sch. Dist.*, 921 F.2d at 1391 (same). Indeed, when experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). In contrast, "judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir.1999) (citation omitted); *Grove v. Principal Mutual Life Ins. Co.*, 200 F.R.D. 434, 445 (S.D. Iowa 2001).

36.     As stated, the standard for granting preliminary approval of the proposed settlement is a determination of whether the proposed settlement is "within the range of possible approval." *Cook v. McCarron*, 1997 WL 47448, at *7 (N.D.Ill. 1997) (citation omitted); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994). The purpose of the preliminary approval process is for the court to ascertain whether reason exists to proceed by notifying the class members of the settlement and to hold a fairness hearing. *Horton*, 855 F.Supp. at 827. In considering whether to grant a motion of preliminary approval of a proposed settlement agreement, the Court utilizes a "threshold inquiry" intended merely to realize conspicuous defects. *See In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 337-38 (N.D. Ohio 2001). Thus, preliminary approval is appropriate:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval . . ..

MANUAL FOR COMPLEX LITIGATION §30.41 at 265 (3d ed. 2000). Unless the Court's initial examination "discloses[s] grounds to doubt its fairness or other obvious deficiencies," the Court

11

should order that notice of a formal fairness hearing be given to Class Members under Rule 23(e). *Id*. Considering the issues, evidence and nature of the settlement negotiations, preliminary approval is proper in this case.

### A. <u>The Settlement Meets the Standards for Preliminary Approval</u>

37. A court generally will preliminarily approve a proposed class settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006). In making such a determination, courts consider the following factors: (1) the strength of the plaintiffs' case compared with the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel*, 463 F.3d at 653; *Isby*, 75 F.3d at 1199. Further, a court must view the settlement in its entirety, rather than focus on an individual component. *Isby*, 75 F.3d at 1199. Finally, as detailed below, a strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations. *Hispanics United of DuPage County,* 988 F. Supp. at 1149, fn. 6; *see also infra* at __.

38. Plaintiffs respectfully submit that the proposed Settlement is fair and reasonable and meets the standard for preliminary approval.

#### 1. Strength of Plaintiffs' Case as Compared to the Terms of the Proposed Settlement

39. One of the key considerations in evaluating a proposed settlement is the strength of the plaintiffs' case as compared to the amount of the defendant's offer. *Isby*, 75 F.3d at 1199. Courts, however, "have been admonished 'to refrain from resolving the merits of the controversy of making a precise determination of the parties' respective legal rights.'" *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). Accordingly, when deciding whether to preliminarily approve the Settlement, this Court must focus on general principles of fairness and reasonableness but not the substantive law governing Plaintiffs' claims. *Id.*

40. The outcome of this litigation is far from certain. When the Parties agreed to settle, Class

Counsel generally believed that many aspects of this case were strong, but that there was a clear risk that the Court might decertify Named Plaintiffs' claims as a class action. Even some of the stronger aspects of the case were subject to ultimate rejection. Bona fide disputes exist as to whether Named Plaintiffs and the Class Members were properly classified as independent contractors and whether Comcast exercised control over the Class Members' working conditions, such that Plaintiffs were jointly employed by the North Star Defendants and Comcast, making Comcast jointly liable for payment of overtime wages. Thus, as in any complex action, the Named Plaintiffs generally faced uncertainties. *Cf.*, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced").

41. Determining a "reasonable" settlement amount is never simply a mathematical calculation that yields a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement ...." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). This case is no different in that there was a range of potential settlements that would have been reasonable.

42. The Settlement, though not providing a maximum value that might be awarded at trial at a later date, provides substantial monetary benefits now, without the time, difficulties, expense and uncertainty of further litigation and without the years of delay any appeal might cause.[5] *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial"); *Hiram Walker & Sons*, 768 F.2d at 891 (settlement approved where "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

43. The proposed Settlement thus ensures that the Class Members will receive significant

---

[5] Plaintiffs also continue to pursue their rights for unpaid wages and other damages against the North Star Defendants.

14

monetary relief and, for practical purposes, means that those Class Members who actually assert their rights and file valid Claim Forms could possibly receive a substantial portion of their claim's potential value.

44. Further, as discussed above, the weekly settlement payment for Class members is reasonable and equitable in light of the circumstances.

45. "District courts enjoy broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members…equitably." *In re "Agent Orange" Product Liability Litigation,* 818 F.2d 179, 181 (2nd Cir. 1987) (internal quotes and citation omitted). The allocation of a settlement fund among competing claimants is one of the court's traditional equitable functions. *Curtiss-Wright Corporation v. Helfand,* 687 F.2d 171, 174 (7th Cir. 1982). In exercising its equitable power, a court has the discretion to favor those class members who have relatively stronger legal claims. *See Equity Funding Corp. of America Securities Litigation,* 603 F.2d 1353, 1366-67 (9th Cir. 1979) (upholding a plan of allocation in which those class members with stronger claims received more than those with weaker claims).

46. In determining the allocation, the parties considered the rate of pay for technicians, their dates of employment, and the information obtained via discovery. So that the settlement is fair, each Class Member's allocation is based on the amount of weeks he or she worked in a week during the settlement period.

### 2. Complexity, Length and Expense of Further Litigation

47. Avoiding the delay and risk of protracted litigation is another reason why counsel frequently recommends, and the courts approve, settlements. *See, e.g., Protective Committee for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968) (judge must

consider "the complexity, expense, and likely duration" of the litigation); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). This consideration applies with full force to this case.

48. Further litigation would require motion practice and the risk, time and expense associated with trial..

49. Couple this remaining discovery with the remaining motion practice (including briefing on Comcast's motion to decertify the class), and the costs of further litigation become considerable in terms of both time and money with uncertain results.

50. Under these circumstances, the benefits of a guaranteed recovery today as opposed to an uncertain result years in the future, are readily apparent. As one court noted, "[t]he bird in the hand is to be preferred to the flock in the bush and a poor settlement to a good litigation." *Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 347 (N.D. Tex. 1976).

16

### 3. There is No Opposition to the Settlement

51. The Named Plaintiffs support the settlement, as do Plaintiffs' counsel and Comcast. At this preliminary stage, Plaintiffs' counsel is unaware of any opposition to the settlement. *See* Exhibit B - Declaration of Ryan F. Stephan.

### 4. Opinion of Counsel

52. The proposed Settlement is the product of arm's-length, non-collusive negotiations conducted by counsel experienced in class actions, and who are intimately familiar with the strengths and weaknesses of the claims and defenses. Using that litigation experience, counsel were capable of making, and did make, well informed judgments about the adequacy of the Settlements reached. *See* Exhibit B.

53. Counsel exercised that experience and their intimate knowledge of the facts of the case and the legal issues facing the Named Plaintiffs and Class Members to conduct an independent analysis of the strengths, weaknesses and value of the claims, and the time, costs and expense of protracted litigation, discovery and appeals.

### 5. The Stage of Proceedings and Discovery Completed

54. As explained above, this complex class action was resolved approximately one year after Comcast was added as a defendant. That one year period involved extensive research, analysis, protracted written and oral discovery, and motion practice. The stage of litigation has advanced to a state that the Plaintiffs' counsel could fairly and fully evaluate the value of the settlement. *See* Exhibit B - Declaration of Ryan F. Stephan.

### 6. The Settlement was the Result of Arm's Length Negotiations, Without Any Hint of Collusion

55. There is plainly no collusion or fraud with respect to this proposed Settlement, which was only reached after two months of intense negotiation. As a distinguished commentator on class

actions has noted:

> There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.
>
>     *       *       *

The initial presumption of fairness of a class settlement may be established by showing:

    a.    That the settlement has been arrived at by arm's-length bargaining;

    b.    That sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; and,

    c.    That the proponents of the settlement are counsel experienced in similar litigation.

Newberg §11.41 at 11-88, 11-91; *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). In this case, as explained above, the terms of the Settlement were reached during extensive arm's-length negotiations by experienced counsel after thorough investigation and analysis. Therefore, the Court should find that an initial presumption of fairness exists to support preliminary approval of the Settlement.

56.     In sum, the foregoing demonstrates that the proposed settlement is fair and reasonable. Moreover, for purposes of preliminary approval, these factors establish that the proposed settlement is "within the range of possible approval." *Horton*, 855 F. Supp. at 827, and should be submitted to class members for their consideration. While the Named Plaintiffs' counsel believes the Settlement merits final approval, the Court need not make that determination at this time. The Court is being asked only to permit notice of the terms of the settlement to be sent to the Class and to schedule a hearing, under Federal Rule of Civil Procedure 23(e), to consider any views expressed by Class Members of the fairness of the Settlement and the Plan of Distribution, the benefits to be received by Class Members and Plaintiffs' counsel's request for an award of attorneys' fees and expenses. *See* 5 James Wm. Moore, Moore's Federal Practice ¶23.80[1], at 23-

336 (3d ed. 2001).

## VI. CONCLUSION

57. For the foregoing reasons, Plaintiffs respectfully request that the Court:

    a. Schedule a fairness hearing on the question of whether the proposed settlement, including without limitation payment of attorneys' fees and costs, and the incentive awards, should be finally approved as fair, reasonable, and adequate as to the members of the Settlement Class;

    b. Appoint Stephan Zouras, LLP as class counsel;

    c. Approve as to form and content the proposed Notice Regarding Proposed Settlement of Class Action for Members of the Settlement Class;

    d. Approve as to form and content the proposed Claim and Consent to Joint Settlement Form, Election to Opt Out of Settlement Form and Change of Name or Address Form;

    e. Direct the mailing of the Notice Regarding Proposed Settlement of Class Action for Members of the Settlement Class, Claim and Consent to Join Form, Election to Opt Out of Settlement Form and Change of Name or Address Form by first class mail to the Settlement Class Members; and,

    f. Preliminarily approve the Settlement subject only to the objections of Class Members and final review by the Court.

Dated: November 28, 2011

*/s/ Ryan F. Stephan*
Ryan F. Stephan
James B. Zouras
Stephan Zouras, LLP
205 North Michigan Avenue
Suite 2560
Chicago, IL 60601
Telephone: (312) 233-1550

**ATTORNEYS FOR PLAINTIFFS**