# EXHIBIT A

## CLASS ACTION SETTLEMENT AGREEMENT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHARLES ELLENBECKER and VALENTIN RAMOS, Individually, and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | |
| v. | Case No. 09-CV-7293 |
| NORTH STAR CABLE CONSTRUCTION, INC., CHRISTINE LEE, COMCAST CORPORATION and COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, | Judge George W. Lindberg  Magistrate Judge Michael T. Mason |
| Defendants. | |

## <u>CLASS ACTION SETTLEMENT AGREEMENT</u>

This class action settlement agreement (the " Agreement") is made and entered into by and between plaintiffs Charles Ellenbecker and Valentin Ramos ("Named Plaintiffs") and all members of the Settlement Class, as defined below, on the one hand, and Defendants North Star Cable Construction, Inc. and Christine Lee (hereinafter "North Star") on the other hand (collectively, the "Parties"), to resolve all claims and disputes which are the subject of the lawsuit filed by the Named Plaintiffs with the United States District Court for the Northern District of Illinois, *Ellenbecker, et. al. v. North Star Cable Construction LLC, et.al.*, Case No. 09-cv-7293 (the "Litigation").

## RECITALS

WHEREAS, the Named Plaintiffs commenced the Litigation by filing a complaint on October 29, 2009, against North Star Cable Communications, Inc. and Christine Lee (collectively, the "North Star Defendants"), asserting, *inter alia*, that members of the Settlement Class were misclassified as independent contractors for a period of time, not compensated for all hours worked, not paid overtime wages, and were subject to improper deductions, in violation of the Illinois Minimum Wage Law, 820 ILCS § 105/1, *et seq.* ("IMWL") and the Illinois Wage Payment and Collection Act, 820 ILCS § 115/1, *et seq.* ("IWPCA"), and that the North Star Defendants' failure to provide all compensation that was due and owing gave rise to claims under Illinois law for unjust enrichment, *quantum meruit* and breach of implied contract;[1]

WHEREAS, On January 11, 2010, before Comcast was added as a party to this suit and before formal discovery had begun, the Named Plaintiffs moved under Federal Rule of Civil Procedure 23(b)(3) for certification a class. The North Star Defendants did not oppose class

---

[1] The Named Plaintiffs also asserted individual claims under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA").

certification and, on February 18, 2010, the Court granted the Named Plaintiffs' motion and certified a class of technicians;[2]

WHEREAS, on June 18, 2010, the Named Plaintiffs amended their complaint to add Comcast as a defendant, and asserted the same claims against Comcast as they previously asserted against the North Star Defendants;

WHEREAS, the Parties engaged in significant discovery, including the exchange of Rule 26 disclosures, service of formal document requests and interrogatories, the exchange of thousands of pages of documents, and the depositions of nine witnesses, including both of the Named Plaintiffs;

WHEREAS, the Parties mediated the Litigation on June 20, 2011 in Chicago, Illinois, with retired United States District Court Judge Wayne R. Andersen.[3] Although the Parties did not reach a settlement at the mediation, the Parties continued negotiations directly;

WHEREAS, after reaching a settlement, obtaining preliminary approval and issuing class notice, the Court, on April 4, 2012 granted final approval of a class action settlement between the Plaintiffs and the Comcast Defendants; (Dkt. No. 137)

WHEREAS, on May 8, 2012 the Court granted North Star's motion for partial summary judgment; (Dkt. No. 146)

WHEREAS, North Star denies and continues to deny all of the allegations in the Litigation and has denied and continues to deny any and all liability and damages of any kind to

---

[2] *See* Exhibit 1 – list of class members.

[3] As a condition of mediation, the Parties agreed to exchange all information, data and documents necessary to fully and fairly evaluate the claims of the Named Plaintiffs and putative class members. To that end, the parties exchanged comprehensive personnel records and related information, including technicians' dates of service, compensation data, and time data. Comcast and the North Star Defendants have also provided Class Counsel with thousands of pages of documents, including company policies related to timekeeping and payment of overtime, and other compliance documents;

anyone with respect to these alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability, damages, or the propriety of class treatment whatsoever, North Star has agreed to settle the Litigation on the terms and conditions set forth in this Agreement to avoid the burden, expense and uncertainty of continuing the Litigation;

WHEREAS, the Parties recognize that the outcome in the Litigation is uncertain and that achieving a final result through the litigation process would require substantial additional risk, discovery, time, and expense;

WHEREAS, the Named Plaintiffs and Class Counsel have conducted a comprehensive investigation and evaluation of the facts and law relating to the claims asserted in the Lawsuit to determine how best to serve the interests of the Settlement Class and believe, in view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement to the Settlement Class, that the settlement as provided in this Agreement is in the best interests of the Settlement Class and that the settlement provided in this Agreement represents a fair, reasonable, and adequate resolution of the claims made in the Litigation;

WHEREAS, the Parties desire to settle fully and finally the differences between them and have agreed to settle this case as to the Named Plaintiffs as well as all individuals who are currently engaged or were engaged by one or more of the North Star Defendants in the state of Illinois as technicians or other positions performing similar responsibilities on behalf of Comcast or any Comcast affiliate during the three-year period preceding the Court's approval of this settlement; and,

WHEREAS, the Parties agree to undertake their best efforts, including all steps and efforts that may become necessary by order of the Court, to effectuate the terms and purposes of

this Settlement Agreement.

NOW, THEREFORE, in consideration of the mutual promises herein contained and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree, subject to approval of the Court, as follows:

## AGREEMENT

## I. DEFINITIONS

A. **"Agreement."** "Agreement" means this agreement, *i.e.*, the Settlement Agreement together with all of its attachments and exhibits, which the Parties understand and agree sets forth all material terms and conditions of the settlement between them, and which is subject to Court approval. It is understood and agreed that North Star's obligations for payment under this Agreement are conditioned on, *inter alia*, the occurrence of the Effective Date.

B. **"Claim and Consent to Join Settlement Form."** "Claim and Consent to Joint Settlement Form" means the form which a Class Member must submit in order to become a Participating Claimant and recover payment pursuant to Paragraph III(D), substantially in the form attached to this Agreement as Form A of Exhibit 2.

C. **"Class Counsel, or "Plaintiffs' Counsel."** "Class Counsel" or "Plaintiffs' Counsel" means Stephan Zouras LLP.

D. **"Class Member" or "Settlement Class."** "Class Member" or "Settlement Class" means the Named Plaintiffs and all persons identified in Exhibit 1 who do not opt out of the Settlement by submitting Opt Outs pursuant to Paragraph III(E)(1), and thus means all individuals who will become bound by the Released State Law Claims portion of the Judgment if the Effective Date occurs.

E.  **"Class Notice."** "Class Notice" means the Notice Regarding Proposed Settlement of Class Action to be sent to Class Members after the Court grants preliminary approval of the Agreement, substantially in the form attached to this Agreement as Exhibit 2.

F.  **"Class Period."** "Class Period" means the period between October 29, 2006 and December 31, 2011.

G.  **"Class Representatives."** "Class Representatives" means Named Plaintiffs Charles Ellenbecker and Valentin Ramos.

H.  **"North Star."** "North Star" means North Star Cable Construction, Inc.

I.  **"North Star's Counsel."** "North Star's Counsel" means The Miller Law Firm, P.C.

J.  **"Court."** "Court" refers to the Court having jurisdiction over the Litigation, at any stage; presently the United States District Court for the Northern District of Illinois.

K.  **"Effective Date."** "Effective Date" means the date on which the Judgment becomes a Final Judgment.

L.  **"Final Approval."** "Final Approval" means the date the Court enters an Order finally approving the Settlement and dismissing the Litigation against North Star with prejudice, while still retaining continuing jurisdiction over the administration of the settlement.

M.  **"Final Approval Order."** "Final Approval Order" means an order that finally and unconditionally grants final approval of the Agreement, grants final certification of the Settlement Class for settlement purposes only, authorizes payments to the Participating Claimants and the Settlement Administrator as provided in this Agreement, and fully and finally extinguishes the Released Federal Law Claims of Participating Claimants and the Released State Law Claims of the Settlement Class as set forth herein.

N.	**"Final Judgment."** "Final Judgment" means the latest of: (i) the date of final affirmance on an appeal of the Judgment; (ii) the date of final dismissal with prejudice of the last pending appeal from the Judgment; or (iii) if no appeal is filed, the expiration date of the time for the filing or noticing of any form of valid appeal from the Judgment.

O.	**"Final Settlement Approval Hearing."** "Final Settlement Approval Hearing" means a hearing set by the Court to take place at the Court's convenience, but at least thirty (30) days after the Notice Response Deadline, for the purpose of (i) determining the fairness, adequacy, and reasonableness of the Agreement terms and associated settlement pursuant to class action procedures and requirements; (ii) determining Class Counsel's attorneys' fees and costs; (iii) approving the payment of Named Plaintiff Service Payments; and (iv) entering Judgment.

P.	**"Judgment."** "Judgment" means the judgment to be rendered by the Court pursuant to this Agreement.

Q.	**"Named Plaintiffs."** "Named Plaintiffs" means Charles Ellenbecker and Valentin Ramos.

R.	**"Named Plaintiffs General Releases."** "Named Plaintiffs General Releases" means the General and Comprehensive Release of Claims, substantially in the form attached to this Agreement as Exhibit 3, to be executed by the Named Plaintiffs to release the claims described in Paragraph I(T).

S.	**"Named Plaintiffs' Released Claims."** "Named Plaintiffs' Released Claims" means any and all applicable federal, state, and local law claims, obligations, demands, actions, rights, causes of action, and liabilities against the Released Parties, of whatever kind and nature, character, and description, whether in law or equity, whether sounding in tort, contract, statute,

or other applicable law, whether known or unknown, and whether anticipated or unanticipated, as detailed in the Named Plaintiffs General Releases, substantially in the form attached to this Agreement as Exhibit 3.

T. **"Net Settlement Amount."** "Net Settlement Amount" means the Settlement Amount less the Administrative Costs, Class Counsel's attorneys' fees and costs, and Named Plaintiff Service Payments.

U. **"Notice Materials."** "Notice Materials" means the Class Notice, the Claim and Consent to Join Settlement Form, the Election to Opt-Out of Settlement and Class Action Form, and the Change of Name and/or Address Information Form.

V. **"Notice Response Deadline."** "Notice Response Deadline" means the date 60 days from when the Settlement Administrator mails the Confidential Claim and Consent to Join Settlement Form to the Class Members.

W. **"Opt Out" or "Opt Outs."** "Opt Out" or "Opt Outs" means written and signed requests by Class Members to be excluded from the Settlement Class, which are to be submitted on the forms entitled "Election to Opt-Out of Settlement and Class Action Form," in the manner and within the time set forth in the Class Notice.

X. **"Participating Claimant."** "Participating Claimant" means any Class Member who timely and correctly returns the Confidential Claim and Consent to Join Settlement Form and thereby elects to receive payment as part of the settlement, pursuant to Paragraph III(D).

Y. **"Preliminary Approval Order."** "Preliminary Approval Order" means an order to be executed and filed by the Court preliminarily approving the terms contained in this Agreement and certifying a class action for settlement purposes only as provided in Paragraph II(A). The Parties will submit a draft order, entitled "Order Granting Preliminary Approval of

Class Action Settlement," substantially in the form attached hereto as Exhibit 4, for the Court's review and approval.

       Z.     **"Released State Law Claims."** "Released State Law Claims" means any and all applicable state and local law claims, obligations, demands, actions, rights, causes of action, and liabilities against the Released Parties, of whatever kind and nature, character, and description, whether in law or equity, whether sounding in tort, contract, statute, or other applicable law, whether known or unknown, and whether anticipated or unanticipated, by a Class Member based on services performed for Comcast customers as an hourly or piece-rate paid installation and disconnection technician working either as an independent contractor or employee for the North Star Defendants in Illinois at any time from October 29, 2006 to December 31, 2011, including, without limitation, claims for wages, damages, premium pay, overtime pay, minimum wages, unpaid costs, penalties (including late payment penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, to the extent that such claims are based on one or more of the following categories of allegations: (a) all claims asserted or which could have been asserted in the Litigation (as defined above and in the Class Notice) which arose under the facts alleged therein and/or under applicable state and local wage and hour laws and regulations; (b) all claims under applicable state and local laws and regulations for the failure to pay any type of premium pay, overtime pay, minimum wages, or other compensation or wages to Class Members; (c) all claims under applicable state and local laws and regulations for the failure to provide or pay for meal, break, and/or rest periods for Class Members; (d) all claims under applicable state and local laws and regulations stemming from or based on the alleged misclassification of Class Members as independent contractors; (e) all claims, including, without limitation, claims for improper deductions or chargebacks related to quality control

checks related to Class Members; (f) all claims, including, without limitation, state and local statutory and common law claims, alleging the unlawful or improper imposition, deduction, or chargeback of, or failure to reimburse, indemnify, cover or pay for business expenses, insurance, costs or deductions of or related to Class Members; and (g) all claims for penalties or additional damages which allegedly arise from the claims described in (a) through (f) above under any applicable law or regulation. The Released State Law Claims include claims meeting the above definition under all applicable statutes, regulations or common law. The Parties stipulate and agree for purposes of this Agreement only that the Court has jurisdiction over all applicable state and local law claims pursuant to 28 U.S.C. § 1332(d).

AA. **"Released Federal Law Claims."** "Released Federal Law Claims" means any and all federal law claims, obligations, demands, actions, rights, causes of action, and liabilities against the Released Parties, of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, by a Participating Claimant based on any and all claims arising under the FLSA for Class Members based on services performed for Comcast customers as an hourly or piece-rate paid installation and disconnection technician working either as an independent contractor or employee for the North Star Defendants in Illinois at any time from October 29, 2006 to December 31, 2011, for any type of relief, including, without limitation, claims for wages, damages, unpaid costs, penalties (including late payment penalties), premium pay, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief.

BB. The Releases defined in Paragraphs I(Z) and I(AA) do not apply to any rights or claims that may arise after the date Preliminary Approval; nor shall any provision in this Agreement be interpreted to waive or extinguish any rights, claims, or processes which may not

under any circumstances be infringed, limited, waived or extinguished, including, but not limited to, a Class Member's right to file a charge with the Equal Employment Opportunity Commission ("EEOC") or any similar state or local agency and to participate in an administrative investigation or proceeding conducted by the EEOC or any such agency. Also, excluded from this release are any claims for physical injury that have not yet been discovered as of Preliminary Approval.

CC. **"Released Parties."** "Released Parties" means North Star, and its predecessors, successors, and assigns, its current and former direct and indirect parents, affiliates, subsidiaries, divisions, and related business entities, and its and their current and former officers, directors, shareholders, employees, agents and representatives.

DD. **"Settlement Administrator."** "Settlement Administrator" refers to Gilardi & Company, the settlement administrator agreed to by the Parties.

EE. **"Service Payments."** "Service Payments" means an amount approved by the Court to be paid to the Class Representatives as described in Paragraph III(F), in addition to their settlement payments as Participating Claimants, in recognition of their efforts in coming forward as Class Representatives, assisting in the prosecution of the Litigation, or otherwise benefiting the Settlement Class.

## II. CERTIFICATION OF THE CLASS FOR PURPOSES OF SETTLEMENT ONLY

A. These stipulations are made solely for purposes of this Agreement. The Parties agree that the stipulations and the terms of this Agreement are in no way an admission that a class or collective action certification would remain proper under the more stringent standard that requires a showing of, *inter alia*, manageability, or that class certification would remain proper after further discovery, and neither the existence nor the terms of this Agreement or the

stipulations will be admissible in this or any other action or proceeding as evidence that (1) a determination or admission that any group of similarly situated employees exists to maintain a class action under Rule 23 of the Federal Rules of Civil Procedure (or comparable state laws or rules) or collective action under the FLSA; (2) an adjudication of the merits of the Litigation; (3) North Star is liable to the Named Plaintiffs or the Settlement Class; or (4) an adjudication of any other matters released in this Agreement, the Named Plaintiffs General Releases or the Claim and Consent to Join Settlement Form.

## III.   PAYMENTS, SETTLEMENT FUND AND ALLOCATION

A.   <u>Maximum Settlement Fund</u>:   The maximum amount that North Star shall be obligated to pay under this Agreement is the gross sum of $165,000.00. ("Maximum Settlement Fund").   This payment will cover the settlement allocations to Named Plaintiffs and Participating Claimants, attorneys' fees, costs, administration costs, and service payments, such that North Star's settlement liability shall not exceed $165,000.00.

B.   <u>Administrative Costs</u>:   "Administrative Costs" means (a) the sum of $61,192.79 to be paid to Class Counsel, pursuant to Paragraph III(G), for fees and litigation expenses; (b) the sum of $10,000.00 to be divided among the Named Plaintiffs as Service Payments, pursuant to Paragraph III(F); and (c) all other costs in connection with consummating the terms of this Agreement, including costs incurred by the Settlement Administrator, up to a cap of $10,000.00 pursuant to Paragraph IV(B).

C.   <u>Net Settlement Amount</u>:   "Net Settlement Amount" means the Maximum Settlement Fund less Administrative Costs and less the aggregate amount of $83,807.21 pursuant to Paragraph III(D).

D.    Allocation:  The Named Plaintiffs and each Class Member who worked as a cable installation and disconnection technician during the Class Period shall be allocated a proportionate share of the Net Settlement Amount based upon the number of Workweeks, as defined herein, the Class Member worked before April 1, 2009, at which time the North Star Defendants reclassified the Class Members as employees of North Star, and the number of Workweeks the Class Member worked on or after April 1, 2009. The settlement shares for the Named Plaintiffs and all Class Members shall be determined according to the following formula agreed upon by the Parties:

1.    First, from the North Star Defendants' records, the number of weeks each Class Member worked during the Class Period before April 1, 2009, and on or after April 1, 2009 has been determined ("Workweeks"). (*See* Exhibit 1)

2.    Second, the Workweeks for each Class Member has been added together to determine there are 12,102.67 "Total Workweeks."

3.    Next, the "Workweek Rate" has been calculated by dividing the Net Settlement Amount by the Total Workweeks to equal $4.57 per workweek worked before April 1, 2009 and $9.15 per workweek worked after April 1, 2009.[4]

4.    Finally, the Workweek Rate has been multiplied by each individual Class Member's Workweeks to determine each individual Class Member's respective "Settlement Allocation." One Workweek occurring after April 1, 2009 is valued at two times the amount of one Workweek occurring on or before April 1, 2009. (*See* Exhibit 1)

E.    Participation in Settlement by Class Members

---

[4] Parties have applied a two to one ratio for the two different time periods based upon the Court's May 8, 2012 ruling granting North Star's partial motion for summary judgment.

1.      Class Members may elect to "opt out" of the Settlement Class and thus exclude themselves from the Lawsuit, the Settlement, and the Settlement Class.  Class Members who wish to exercise this option must fully complete, properly execute, and timely mail, per the instructions therein, the form entitled "Election to Opt Out of Settlement and Class Action Form" attached hereto as Form B of Exhibit 2.  If a fully completed and properly executed Opt Out form is not received by the Settlement Administrator from a Class Member and postmarked on or before the Notice Response Deadline, then that Class Member will be deemed to have forever waived his or her right to opt out of the Settlement Class and will be deemed to be a member of the Settlement Class.  Class Members who do timely submit fully completed and properly executed Opt Out forms shall have no further role in the Litigation, and for all purposes shall be regarded as if they never were either a party to this Litigation or a Class Member, and thus they shall not be entitled to any benefit as a result of the Litigation, this Agreement and the settlement that it evidences, nor will they have released any claims they may have against North Star.

2.      Class Members who do not opt out of the Settlement Class pursuant to Paragraph III(E)(1) may object to the Agreement by submitting written objections to the Court and mailing copies of their written objection so that they are received by the Settlement Administrator and are postmarked no later than the Notice Response Deadline.  Any objections must be timely submitted as required in this Paragraph or else they will be waived.  The Class Notice shall advise Class Members of this option.   The Settlement Administrator shall immediately provide copies of any such objections to Class Counsel and North Star's Counsel.

3.      Class Members who do not opt out of the Settlement Class pursuant to Paragraph III(E)(1) may elect to become Participating Claimants.  Members of the Settlement Class who wish to exercise this option and certify their entitlement to payment under the

Agreement must fully and timely complete, execute, and mail, per the instructions therein, the form entitled "Claim and Consent to Join Settlement Form" attached hereto as Form A of Exhibit 2. If a completed and properly executed Claim and Consent to Join Settlement Form is not received by the Settlement Administrator from a Class Member and postmarked on or before the Notice Response Deadline, then that Class Member will be deemed to have forever waived his or her right to be a Participating Claimant and receive payment under this settlement. However, as long as they do not properly submit Opt Outs, Class Members shall be deemed members of the Settlement Class and shall be subject to the Judgment even if they do not submit a Claim and Consent to Join Settlement Form in a timely and proper fashion. Those, however, who did not timely submit a Claim and Consent to Join Settlement Form and did not submit an Opt Out form will not be deemed to have waived any FLSA claim they may have against North Star. Consistent with the law, however, the statute of limitations for an FLSA claim continues to run until a person affirmatively opts-in to, or files, an FLSA action. Only Class Members whose completed and properly executed Claim and Consent to Join Settlement Forms are submitted to the Settlement Administrator shall be entitled to payment pursuant to the settlement and this Agreement.

   F. <u>Service Payments to Named Plaintiffs.</u> Service payments for each of the Named Plaintiffs shall not exceed the total amount of $10,000.00 as follows: (1) Charles Ellenbecker in the gross amount of $5,000.00; and (2) Valentin Ramos in the gross amount of $5,000.00. The $10,000.00 service payments to Mr. Ellenbecker and Mr. Ramos are being sought in recognition of their efforts, as the Named Plaintiffs and Class Representatives, to pursue the claims raised in this Litigation on behalf of the Settlement Class, including responding to written discovery, giving depositions in this Litigation and otherwise assisting Class Counsel with the prosecution

of this Litigation, and in return for their full and complete release of all claims, in the form of a fully executed Named Plaintiffs General Releases attached as Exhibit 3. The service payments paid to each Named Plaintiff under this Agreement shall be reported as non-wage income to the United States Internal Revenue Service and to other appropriate taxing authorities ("Taxing Authority" or "Taxing Authorities") on a Form 1099 issued to each Named Plaintiff.

In the event that the Court does not approve the amount of the service payment(s) to either or both of the Named Plaintiffs, the settlement will proceed, and this Agreement as well as the Named Plaintiffs General Releases will be modified to reflect an amount that is approved by the Court. Any amounts allocated as service payments for the Named Plaintiffs under this Agreement, but not approved by the Court, shall be added to the Net Settlement Amount.

G.    Payment of Attorneys' Fees and Costs. Class Counsel will apply to the Court for approval of fees not to exceed thirty-three (33%) of the Maximum Settlement Fund or $54,450.00 and costs in the amount of $6,742.79. North Star will agree not to oppose such application. Pursuant to the payment plan referenced in paragraph IV(C)(6) below, and subject to Court approval, North Star will pay Class Counsel the amount allowed by the Court, not to exceed $61,192.79, for all attorneys' fees and litigation expenses related to this Litigation. Class Counsel shall provide counsel for North Star with pertinent taxpayer identification numbers. Other than any reporting of this fee payment as required by this Agreement or law, which North Star shall make, Class Counsel shall alone be responsible for the reporting and payment of any federal, state, and/or local tax on any payment that they have received pursuant to this Paragraph. Payments made under this Paragraph shall constitute full satisfaction of any claim for fees or costs, and the Named Plaintiffs and Class Counsel, on behalf of themselves and all Participating

Claimants, agree that they shall not seek nor be entitled to any additional attorneys' fees or costs under any theory in this Litigation.

        H.    <u>Release Of Claims</u>.

        1.    Upon the Effective Date and after North Star has paid the entire Settlement Amount, the Named Plaintiffs and each of the Class Members, including, but not limited to, all Participating Claimants, on behalf of themselves and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released State Law Claims as defined in Paragraph I(Z)  herein and in the relevant releases.

        2.    In addition, upon the Effective Date and after North Star has paid the entire Settlement Amount, the Named Plaintiffs and each of the Participating Claimants, on behalf of themselves and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released Federal Law Claims as defined in Paragraph I(AA) herein and in the relevant releases.

        3.    Further, upon the Effective Date and after North Star has paid the entire Settlement Amount, the Named Plaintiffs shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Named Plaintiffs' Released Claims as detailed in the Named Plaintiffs General Releases, attached as Exhibit 3.

## IV.    THE SETTLEMENT PROCESS

A.     Court Approval of Settlement and Dismissal of Case.  As soon as practicable and without undue delay, the Parties agree to jointly seek the Court's preliminary approval of the terms of this Agreement and to dismiss the Litigation with prejudice, on the condition that the Court retain jurisdiction to administer and enforce the terms of this Agreement, to the extent allowed by law.

1.     A condition precedent to this Agreement is the Court's approval of the Preliminary Approval Order attached as Exhibit 4, without any changes by the Court to the Preliminary Approval Order that either of the Parties deems material, and Named Plaintiffs' execution of the Named Plaintiffs General Releases set forth in Exhibit 3.

2.     The Parties shall provide to the Court for review and approval this Agreement, with exhibits, including (a) the proposed Preliminary Approval Order in substantially the form attached as Exhibit 4, (b) the Named Plaintiffs General Releases, attached as Exhibit 3, (c) the Class Notice to Class Members substantially in the form attached as Exhibit 2; (d) the Claim and Consent to Join Settlement Form (in the case of the Class Members) substantially in the form attached as Form A of Exhibit 2 and such other information as the Court may request.

3.     The Parties will cooperate and take all necessary steps to effectuate judicial approval of the Agreement.  Should the Court not approve the Agreement, or should the Court not approve and enter the Preliminary Approval Order in the form attached as Exhibit 4 (or in a form without any changes by the Court that either of the Parties deems material), the terms of this Agreement will be null and void, the Parties will retain all rights and defenses in the Litigation, and all negotiations and information and materials pertaining in any way to this Agreement or the settlement of the Litigation will be inadmissible.  In such an event, the Parties

agree in good faith to negotiate about appropriate revisions and re-submit for the Court's approval. In the event this settlement is never approved by the Court, the Parties will retain all rights and defenses in the Litigation, and all negotiations and information and materials pertaining in any way to this Agreement or the settlement of the Litigation will be inadmissible.

4.      Within ten (10) business days following the filing of this Agreement with the Court, North Star shall serve upon the Office of the Comptroller of the Currency of the United States and the appropriate State official of each State in which any Class Member resides, as determined by the Parties' records, a notice of the proposed settlement in compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. §1715 ("CAFA"). A sample of the CAFA Notice is attached to this Agreement as Exhibit 5.

5.      <u>Final Approval</u>. At least thirty (30) days after the Notice Response Deadline, the Court shall set the Final Settlement Approval Hearing. Prior to the Final Settlement Approval Hearing, the Named Plaintiffs and North Star shall jointly move the Court for entry of the Final Approval Order and the associated Judgment. The Parties shall make all reasonable efforts to secure entry of the Final Approval Order and the associated Judgment. If the Court rejects their request, fails to enter the Final Approval Order, or fails to enter the Judgment, this Agreement shall be void *ab initio*, and North Star shall have no obligations to make any payments under the Agreement, except for Administrative Costs already incurred by the Settlement Administrator. At the time the motion is filed requesting Final Approval, the Named Plaintiffs and Class Counsel also shall make an application for awards to them, including awards of attorneys' fees and costs. Notwithstanding any order entered on the Named Plaintiffs' and Class Counsel's application for awards to them, under no circumstance shall Defendant be required to pay any such award absent occurrence of the Effective Date.

B.      <u>Settlement Administrator.</u>   If the Court grants preliminary approval of this Agreement, and Named Plaintiffs execute the Named Plaintiffs General Releases set forth in Exhibit 3, the settlement will be administered by the Settlement Administrator.  Reasonable fees and expenses of the Settlement Administrator shall be deducted from the Maximum Settlement Fund pursuant to Paragraph III(A).  The Settlement Administrator shall be required to agree to a reasonable not-to-exceed cap of no greater than $10,000.00 for all fees and expenses for claims administration work.

C.      <u>Settlement Administration.</u>   The Parties agree to the following procedure for administration of the settlement:

1.      If the provisions of Paragraphs IV(A) and IV(B) above are satisfied, North Star will establish an account with the Settlement Administrator.  In no circumstances will any communications regarding the Agreement or the settlement be made to Class Members (except for the Named Plaintiffs) unless the Court grants Preliminary Approval as set forth in Paragraph IV(A).  The Settlement Administrator shall take the actions necessary to formalize the creation of a qualified settlement fund for purposes of administering the Settlement.  The Parties shall provide the Settlement Administrator with all necessary cooperation for the creation of a qualified settlement fund, including but not limited to the execution of all necessary documents.

2.      Within fourteen (14) days of Preliminary Approval, Class Counsel will provide the names and addresses of Class Members ("Contact Information") to the Settlement Administrator.  If this fourteen (14) day deadline is not practicable, the Parties agree to meet and confer regarding another appropriate deadline. North Star and Class Counsel will provide any other information to the Settlement Administrator necessary to enable it to verify the calculations specified in Paragraph III(D) and to obtain current Contact Information.   Any and all

information, including Social Security Numbers, provided by North Star or Class Counsel shall be held in confidence and shall be used solely for purposes of effectuating this Agreement. This information shall not be disclosed to Named Plaintiffs or Class Members. The Settlement Administrator will make reasonable efforts to obtain valid, current addresses for Class Members, including validating Contact Information through the national change of address database or other third party change of address databases prior to sending the settlement materials and thereafter as needed.

3. The Parties will jointly agree to the initial written communications to Class Members relating to the settlement. The initial written communications to be sent to Class Members (other than the Named Plaintiffs) shall include the Class Notice and Claim and Consent to Join Settlement Form (Exhibit 2 and Form A). Written communications will be in English unless otherwise requested by a Class Member, in which case the Settlement Administrator and the Parties will make reasonable efforts to translate Exhibit 2 or Form A for the Class Member into his or her chosen language.

4. Within ten days of updating/verifying the Contact Information, the Settlement Administrator shall issue the Class Notice and Claim and Consent to Join Settlement Form, as approved by the Court, in substantially the forms attached hereto and made a part of this Settlement Agreement as Exhibit 2 and Form A to all Class Members. These materials shall inform Class Members of their right to opt-out of the settlement, object to the settlement, or elect to participate in the settlement, and the approximate amount they are entitled to receive if they participate. If these materials sent to a Class Member are returned as undeliverable, the Settlement Administrator shall promptly undertake reasonable steps to determine the Class

Member's current address and, if an additional address is located, to send the materials to the additional address.

      5.     Class Members will have a deadline of sixty (60) days from mailing in which to fully execute and return the Claim and Consent to Join Settlement Form ("Notice Response Deadline"). Claim and Consent to Join Settlement Forms must be returned via U.S. First Class Mail and be postmarked by the Notice Response Deadline, which shall be specified in the Cover Letter, to be timely. North Star may, in its sole discretion, choose to accept as timely submitted any Claim and Consent to Join Settlement Form returned by any Class Member within ninety (90) days after the Notice Response Deadline, in which case such Class Members will be deemed to have timely submitted the Claim and Consent to Join Settlement Form for purposes of this Agreement. Absent North Star's consent, however, any Class Member who fails to return the properly executed Claim and Consent to Join Settlement Form by the Notice Response Deadline will not be eligible to participate in the settlement or receive any amounts described in Paragraph III(D).

      6.     Payment to the Plaintiffs and Plaintiffs' attorneys shall be made in the aggregate amount of $165,000 by installment as follows:

          a.     $65,000.00 within 21 days of final approval to be paid as follows:

               (i)     $33,020.04 to the claimants;

               (ii)    $24,109.96 to Stephan Zouras, LLP for attorneys' fees and costs;

               (iii)   $3,940.00 to the Named Plaintiffs; and,

               (iv)   $3,940.00 to the Claims Administrator.

        b.      $100,000.00 within ten (10) months after the first payment above [5] as follows:

        (i)      $50,787.17 to the claimants;

        (ii)      $37,082.83 to Stephan Zouras, LLP for attorneys' fees and costs;

        (iii)      $6,060.00 to the Named Plaintiffs; and,

        (iv)      $6,060.00 to the Claims Administrator.

7.      The Parties will instruct the Settlement Administrator to provide periodic updates to Class Counsel and North Star's Counsel regarding participation.

8.      The Settlement Administrator will keep a log of all communications with any Class Member and will be responsible for responding to inquiries about the settlement.  In the event any Class Member requests to speak to Class Counsel or has a question that seeks legal advice about the settlement, the Settlement Administrator will provide the Class Member with Class Counsel's contact information, including telephone number, email address, and mailing address.  The Settlement Administrator will be instructed to forward all other unresolved questions or issues in writing to Class Counsel and North Star's Counsel, who will work jointly to attempt to provide a resolution.

9.      The Parties agree to cooperate in good faith to agree upon the resolution of any issue or dispute relating to or arising from this Agreement, including the settlement administration or claims process (to the extent those matters are not resolved pursuant to Paragraph IV(C)(9) above).  If any party identifies such an issue that is not resolved pursuant to Paragraph IV(C)(9) above, that party agrees to inform the other party so that the Parties may

---

[5] Defendants agree to make monthly contributions of $10,000 per month for ten (10) months to an interest bearing account maintained by the claims administrator.  After, the ten month period and $100,000.00 has been contributed by the Defendants, the Claims Administrator will issue the remaining settlement checks to claimants.

meet and confer regarding an appropriate resolution of the issue prior to raising any such issue with the Court.

10.     In communications to Class Members, the Parties shall not disclose the amount of the overall settlement to other Class Members, and the Parties will cooperate with the Settlement Administrator to facilitate the purposes of the settlement.  Any communication between Class Counsel and Class Members (except for the Named Plaintiffs) initiated pursuant to Paragraph IV(C)(9) above shall be limited to the Class Member's own circumstances such as weeks worked, the calculation of his or her individual settlement amount, and any other matter that relates to his or her own individual issues.

11.     The Settlement Administrator will provide the originals of the Claim and Consent to Join Settlement Forms to North Star's Counsel and retain copies.

D.     <u>Unclaimed Monies.</u>  Any portion of the Net Settlement Amount that is not distributed to Class Members because those Class Members submitted Opt-Outs or did not file timely and complete Claim and Consent to Join Settlement Forms, shall not revert to North Star, but instead shall be reapportioned for distribution among the Participating Claimants based on the formula set forth in Paragraph III(D).

E.     <u>Checks Issued to Named Plaintiffs and Participating Claimants.</u>  All checks issued pursuant to this Agreement, including payments to the Named Plaintiffs and payments to all Participating Claimants, shall be valid and negotiable for a period of 180 days from issuance. Any checks issued pursuant to this Agreement that are not cashed or deposited within 180 days from issuance shall become void. At the end of the 180 day period from the date the checks were mailed, the Named Plaintiffs and all Participating Claimants shall remain bound by this Agreement, their Releases, and the Final Order Approving Settlement, notwithstanding any

failure to cash or deposit any check issued pursuant to this Paragraph. The payments, described above, whether or not cashed, shall be in lieu of and discharge the obligations as specified in the applicable Named Plaintiffs General Releases and Claim and Consent to Join Settlement Form, examples of which are attached as Exhibit 3 and Form A of Exhibit 2, respectively.

   F. <u>Tax Treatment of Payments.</u> In the case of the settlement allocations set forth in Paragraph III(D) above, fifty percent (50%) of the $83,807.21 of individual payments to Plaintiffs constitutes wages, and fifty percent (50%) of the $83,807.21 of individual payments to Plaintiffs constitutes liquidated damages. Defendant shall withhold legally required payroll taxes from the portion of the settlement that constitutes wages, shall issue each Plaintiff an IRS Form W-2 indicating those amounts, and shall pay the appropriate tax authorities the employer portion of any and all payroll taxes required to be paid in connection with the wages portion of the payment. Defendant shall be solely responsible for all liabilities, assessments and penalties, if any, relating to the employer portion of payroll tax liabilities. Participating Class Members shall be solely responsible for all other liabilities, assessments and penalties, if any, relating to tax payments regarding individual payments to them. The payments provided by Paragraph III(G) above shall be considered attorneys' fees and reported on behalf of Class Counsel to the Taxing Authorities on a Form 1099 issued to Class Counsel with the taxpayer identification number of Class Counsel.

## V. NON-ADMISSION OF LIABILITY

   This Agreement shall not in any way be construed as an admission by North Star that it has acted wrongfully with respect to Named Plaintiffs or Class Members collectively or individually or to any other person, or that those individuals ever enjoyed an employment relationship with North Star or have any rights whatsoever against North Star, and North Star

specifically disclaims any liability to or wrongful acts against the Named Plaintiffs and Class Members or any other person, on the part of North Star, and its predecessors, successors and assigns, its current and former direct and indirect parents, affiliates, subsidiaries, divisions, and related business entities, and its and their current and former officers, directors, shareholders, employees, agents, and representatives.  Furthermore, the Parties agree that this Agreement does not constitute an adjudication of the merits of the Litigation or any other matters released in this Agreement.  Accordingly, the Parties agree that none of them has prevailed on the merits, nor shall this Agreement serve or be construed as evidence that any party has so prevailed or that North Star or the Released Parties have engaged in any wrongdoing.  Nothing in this provision shall prevent the Parties from bringing an action to enforce the terms of this Agreement.

## VI.    RELEASE OF FEES AND COSTS

Named Plaintiffs and Class Counsel understand and agree that any fee payments made under Paragraph III(G) of this Agreement will be the full, final, and complete payment by North Star of all attorneys' fees and costs arising from or relating to the representation of the Named Plaintiffs, Class Members, Participating Claimants, or any other attorneys' fees and costs associated with the investigation, discovery, and/or prosecution of the Litigation against North Star.  As an inducement to North Star to enter into this Agreement, and as a material condition thereof, Named Plaintiffs and Class Counsel hereby irrevocably and unconditionally release, acquit, and forever discharge any claim they may have against North Star for attorneys' fees or costs arising from or relating to the individuals and matters identified in this Paragraph.  As a further inducement to North Star to enter into this Agreement, and as a material condition thereof, Named Plaintiffs and Class Counsel further understand and agree that the fee and cost payments made pursuant to Paragraph III(G) of this Agreement will be the full, final, and

complete payment of all attorneys' fees and costs that are released, acquitted, or discharged under this Paragraph. As further inducement to North Star to enter into this Agreement, and as a material condition thereof, Named Plaintiffs and Class Counsel warrant and represent that they will not, nor will any of their employees, agents, or representatives of their firms, file any claims for attorneys' fees or costs against North Star, including, but not limited to, bills of costs or requests for attorneys' fees, arising out of the Litigation, and Named Plaintiffs and Class Counsel hereby irrevocably and unconditionally release, acquit, and forever discharge North Star of any liability for such fees and/or costs. Furthermore, Named Plaintiffs and Class Counsel represent and warrant that no attorney, other than Class Counsel, has any attorney's fee lien on or claim to any proceeds arising out of, by virtue of, or in connection with the Litigation, and that the terms of this Agreement shall fully satisfy any and all claims by any attorney arising out of or by virtue of or in connection with the Litigation.

## VII.  CONFIDENTIALITY

The Named Plaintiffs and North Star and their respective counsel agree to keep the fact of this litigation, the Settlement, its terms, negotiations, and amount of payments confidential to the maximum extent permissible under the law.

## VIII.  LIQUIDATED DAMAGES

In the event of a breach by Named Plaintiffs of the terms of Paragraph VII of this Agreement, the Parties agree that North Star shall be entitled to liquidated damages from Named Plaintiffs in the amount equal to the payments made to Named Plaintiffs under this Agreement for such breach. The Parties agree that a breach of Paragraph VII constitutes a breach of this Agreement and that it would be impossible or impracticable to compute the actual damages resulting from such a breach, and the liquidated damages amount set forth in this Agreement is

reasonable in light of the anticipated damage North Star would suffer from a breach of Paragraph VII.  North Star retains the right to seek any rights, damages, or remedies that North Star may have available pursuant to federal, state, or local law, including but not limited to liquidated damages in the amount of payments made to Named Plaintiffs, as set forth above.

## IX.    USE AND RETURN OF DOCUMENTS

All originals, copies, and summaries of documents, presentations, and data provided to Class Counsel by North Star in connection with the mediation or other settlement negotiations in this matter, including e-mail attachments containing such materials, may be used only with respect to this Settlement, or any dispute between Class Members and Class Counsel regarding the Settlement, and no other purpose, and may not be used in any way that violates any existing contractual agreement, statute, or rule.

## X.    COURT RETAINS JURISDICTION TO ENFORCE AGREEMENT

The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Agreement, to the extent permitted by law, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Agreement.  This retention of jurisdiction encompasses any disagreement among the Parties concerning the final forms of the Notice Materials or other documents necessary to implement this Agreement, and all other disputes regarding the Agreement and its implementation. Any action to enforce this Agreement shall be commenced and maintained only in this Court.

## XI.    GOVERNING LAW

This Agreement is made and entered into in the State of Illinois and shall in all respects be interpreted, enforced, and governed by and under the laws of the State of Illinois.  Any legal action relating to this Agreement shall be brought in this Court before Judge Lindberg or any judge presiding in his stead.  Should any party to this Agreement (the "initiating party") institute

any legal action against another party (the "responding party") with respect to any dispute relating to this Agreement in a forum other than this Court, and the initiating party does not cure (e.g., withdraw, transfer or otherwise dismiss) such legal action within fourteen business days of receiving notice from the responding party, then the responding party shall be entitled to recover from the initiating party all damages, costs, expenses, and attorneys' fees incurred as a result of such action.

## XII.   COOPERATION CLAUSE

The Parties agree to cooperate to effectuate the settlement of the Litigation, including securing the Court's approval of the Agreement, assisting with the administration of the settlement in accordance with the terms of this Agreement, and obtaining a final dismissal. The Parties further agree to cooperate to the extent reasonably necessary to effect and implement all terms and conditions of the Agreement and to exercise their best efforts to accomplish the terms and conditions of the Agreement, including but not limited to obtaining the dismissal, transfer to the Court, or stay of any pending or subsequently-filed class or collective action lawsuit that alleges any of the claims covered by the Named Plaintiffs General Releases (in the case of Named Plaintiffs) or the Claim and Consent to Join Settlement Form (in the case of Participating Claimants).

## XIII.  ASSIGNMENTS

Named Plaintiffs and Class Counsel represent that they have not assigned or transferred, or purported to assign or transfer, to any person or entity any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

## XIV.   NO REPRESENTATIONS

Named Plaintiffs and Class Counsel represent and acknowledge that, in executing this Agreement, they do not rely and have not relied upon any representation or statement made by North Star or by any of North Star's agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement. Notwithstanding the above, Class Counsel relied upon, and is relying upon, the employment data and information provided in negotiating this settlement.

## XV. BINDING AGREEMENT

This Agreement shall be binding upon the Parties and upon their respective heirs, administrators, representatives, executors, successors, and assigns, and shall inure to the benefit of North Star and to its respective heirs, administrators, representatives, executors, successors, and assigns.

## XVI. SEVERABILITY

Should any clause, sentence, provision, paragraph, or part of this Agreement be adjudged by any court of competent jurisdiction, or be held by any other competent governmental authority having jurisdiction, to be illegal, invalid, or unenforceable, such judgment or holding shall not affect, impair, or invalidate the remainder of this Agreement, but shall be confined in its operation to the clause, sentence, provision, paragraph, or part of the Agreement directly involved, and the remainder of the Agreement shall remain in full force and effect.

## XVII. NO WAIVER

The failure to enforce at any time, or for any period of time, any one or more of the terms of this Agreement shall not be a waiver of such terms or conditions. Moreover, it shall not be a waiver of such party's right thereafter to enforce each and every term and condition of this Agreement.

## XVIII. CONSTRUCTION

Counsel for each party has reviewed this Agreement prior to signing the Agreement. Therefore, the normal rule of construction that any ambiguity or uncertainty in a writing shall be interpreted against the party drafting the writing shall not apply to any action on this Agreement.

## XIX. SOLE AND ENTIRE AGREEMENT

This Agreement, including Exhibits 1 through 5 and attached hereto, set forth the entire agreement between the Parties hereto. This Agreement fully supersedes any and all prior oral or written agreements or understandings between the Parties hereto pertaining to the subject matter hereof. This Agreement may only be modified in writing.

## XX. COUNTERPARTS

This Agreement may be executed in two or more counterparts, each of which counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.


[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

**NORTH STAR CABLE CONSTRUCTION, INC.**

Date: _____      By: _____

                             Printed Name: _____

                             Title: _____


**CHRISTINE LEE**

Date: _____      By: _____

                             Printed Name: Christine Lee

**NAMED PLAINTIFF CHARLES ELLENBECKER**

Date: _____     By: _____
                            Printed Name: Charles Ellenbecker


**NAMED PLAINTIFF VALENTIN RAMOS**

Date: _____     By: _____
                            Printed Name: Valentin Ramos


**STEPHAN ZOURAS, LLP**

Date: _____     By: _____

                            Printed Name: _____

                            Title: _____